# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN STEPHEN VANDERBOL III, | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-17-128-HE |
| STEPHANIE A TULLER, et al., | ) |
| Defendants. | ) |

## ORDER

This case arises out of a long-running child custody dispute. After extensive proceedings in other courts, plaintiff filed suit in this court in 2016 asserting various claims against the same defendants as are named in this case. *See* Vanderbol v. Tuller, CIV-16-1422-HE. Jurisdiction in that case was premised on diversity. The court concluded diversity jurisdiction was lacking and dismissed the case.

This case is substantially a refiling of the previous case. Plaintiff alleges a wide-ranging conspiracy among the defendants to violate his constitutional and other rights. All but one of the defendants have filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has responded to the motions. For the reasons stated below, the court concludes the motions to dismiss should be granted and this case dismissed.

## Standard for motion to dismiss

When considering whether claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint as true and views them in the light most favorable to the plaintiff, the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). To survive the motion, the complaint must allege

"enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In other words, the facts alleged in the complaint must allow the court to infer the defendant's liability. Shields, 744 F.3d at 640 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Twombly/Iqbal pleading standard "is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." Id. at 640–41 (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)). Because plaintiff is proceeding *pro se*, his complaint is liberally construed.

## Background

Plaintiff's *pro se* complaint alleges an extensive conspiracy involving his ex-wife (Tuller), her lawyers (Schumacher and Christensen), the court-appointed guardian ad litem for the minor child of Tuller and plaintiff (Holden), the two judges presiding over the cases in Oklahoma state court (Hammond and Ogden), and a more recent ex-wife (Schwartz-Vanderbol).[1] Most of the allegations of the complaint are couched in such conclusory and bombastic language that it is difficult to identify many of the underlying facts. However, the extensive exhibits attached to the complaint supply considerable background detail,[2] and the court's references to "the complaint" necessarily include those exhibits. One such

---

[1] *Ms. Schwarz-Vanderbol is not a defendant in the current suit.*

[2] *The complaint, with exhibits, is 429 pages.*

2

exhibit, a 2015 decision of the Oklahoma Court of Civil Appeals, details the Oklahoma state court proceedings that led to this suit.

The complaint indicates that plaintiff and defendant Tuller were divorced in Missouri in 2006. The parties were awarded joint custody of their minor child and plaintiff was ordered to pay child support. In April 2011, Tuller sought to domesticate the decree in the State of Oklahoma. She also sought a contempt citation for failure to pay child support and sought modification of both the custody and support provisions of the decree. Plaintiff objected to jurisdiction in the Oklahoma state court and failed to appear at the January 2012 trial, resulting in that court entering default judgment against him for back child support and finding him in indirect contempt of court due to the failure to pay. The default judgment also awarded sole custody of the minor child to defendant Tuller and modified the visitation arrangements. In later proceedings, at which plaintiff also failed to appear, the court awarded fees and costs to Tuller. Plaintiff's non-payment of those amounts resulted in further contempt proceedings in 2013.

At some point, plaintiff filed a motion to vacate the Oklahoma judgment on the basis of a lack of subject matter jurisdiction. That motion and related proceedings eventually led to the 2015 decision of the Court of Civil Appeals, which reversed in part and affirmed in part.[3] The court affirmed the trial court order insofar as it related to the back child support, but reversed as to the portion of the order modifying custody and all other orders

---

[3] *The Oklahoma Supreme Court, pursuant to Rule 1.183, Okla. Sup. Ct., issued the mandate affirming in part and reversing and remanding in part on behalf of the Court of Civil Appeals.*

stemming from that portion. It concluded "the trial court did not have subject matter jurisdiction to modify Missouri's custody determination at the time of the Default Order of Modification." [Doc. #1-12] at 8.[4] It based that conclusion on the fact that, as of the time of the default judgment, there was no showing that the Missouri court had determined that it no longer had exclusive, continuing jurisdiction or that an Oklahoma court would be a more convenient forum, within the meaning of the relevant provision of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 43 OKLA. STAT. § 551-203. But in July of 2012, several months after entry of the Oklahoma judgment modifying custody, the Missouri court determined that it no longer had jurisdiction over the child or the parties.

The complaint indicates that, after the 2015 appellate decision, further proceedings to modify custody were pursued in the Oklahoma state court. More recently, custody and related proceedings have occurred in Texas, where plaintiff now lives. The complaint also alleges that, between March 2013 and August 2015, plaintiff was "subjected to abuse, unlawful detention, coercion, extortion, and great stress by the repeated unlawful, merciless, illegal, abusive and meritless actions of the defendants" through the proceedings in Oklahoma state court. [Doc. #1] at 6. Plaintiff alleges that by reason of the various proceedings and the releases of his financial information through them, he suffered over $250 million dollars in damages—approximately $50 million in salary or compensation losses, $200 million in investment losses, and another million in attorney's fees, fines and

---

[4] *The page number cited is the page number of the exhibit, not the ECF page number. This convention is continued through this order.*

the like.  The complaint further alleges that, as a result of these same acts, plaintiff suffered a debilitating stroke resulting in the "removal of 40% of plaintiff's lower brain."  *Id*.

The complaint contains other arguments and facts that are unnecessary to detail here.  The complaint's overarching theme is that defendants, principally through their involvement in the Oklahoma state court proceedings, all engaged in a broad conspiracy to violate plaintiff's civil rights.   He alleges that the conspiracy has "inhibited the judicial machinery in the states of Oklahoma and Texas" to the point where "such machinery is likely irreparably damaged."  *Id*. at 3.

## Discussion

The court first disposes of the claims against the two judges, Hammond and Ogden. Those defendants have moved to dismiss on the basis of judicial immunity, which plainly applies here.  As a general matter, judges are not subject to liability for "their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.  Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).

An exception to the doctrine of judicial immunity applies in limited circumstances. To take advantage of those exceptions and defeat judicial immunity, a plaintiff must show that the judge's actions were either non-judicial acts or were in "clear absence of all jurisdiction."  *Id*. at 356-57.  The scope of a judge's jurisdiction is to be construed broadly, and acting in excess of jurisdiction is not the same as acting in the "clear absence of all jurisdiction."  *Id*. at 357.   Plaintiff attempts to invoke the exception here, based on the Court of Civil Appeals' determination that the state district court lacked subject matter jurisdiction.  But the argument misconstrues the nature of that Court's determination and

of the exception. The Court's conclusion of a lack of subject matter jurisdiction was directed to the question of whether, under the UCCJEA, jurisdiction over the child custody relationship had shifted from the Missouri court to the Oklahoma court. That is the "subject matter" the Court addressed. And the Court concluded, based on the finding referenced above, that jurisdiction over the custody relationship had not, as of the time of the default judgment, been acquired by the Oklahoma courts. That is quite different from being a basis for concluding that the judges acted in the complete absence of all jurisdiction. *See generally*, Bradley v. Fisher, 80 U.S. 335 (1871). It is clear that the district courts of Oklahoma have, in general, jurisdiction over child custody and other family relations matters. It is similarly undisputed that Hammond and Ogden were, at the times of the acts challenged by plaintiff, judges assigned to such cases. It is clear the actions they took—entering the various orders and the like—were actions taken in their judicial capacities.[5]

An erroneous determination of whether Oklahoma had acquired jurisdiction over the custodial relationship does not translate into a conclusion that Judge Hammond acted in the absence of all jurisdiction, nor does it undercut the application of the immunity doctrine to later actions taken by the two judges. Plaintiff's effort to hold the judges personally liable for his claimed damages is barred by the doctrine of judicial immunity.

Plaintiff's request for injunctive relief directed to the two judges does not lead to a different result. Under 42 U.S.C. § 1983, a plaintiff cannot receive injunctive relief against

---

[5] *The complaint alleges misconduct by Judge Ogden in having contact with the judges of other courts. Such contact is plainly contemplated by the OCCJEA, 43 OKLA. STAT. § 551-206, and within the scope of his judicial duties.*

a judicial officer unless "a declaratory decree was violated or declaratory relief was unavailable." The complaint does not allege the existence of any declaratory decree or that declaratory relief is unavailable, so a basis for injunctive relief has not been shown. Further, the sort of injunctive relief plaintiff seeks—vacation of all the Oklahoma district court orders—is likely beyond the jurisdiction of this court to grant.[6] Plaintiff's claims against defendants Hammond and Ogden will be dismissed with prejudice.

Judicial immunity does not apply to the claims against the other defendants, but those claims must nonetheless be dismissed for failure to state a claim.[7]

As a threshold matter, the complaint does not state <u>facts</u> which support a plausible basis for the grand conspiracy which plaintiff alleges. Stating a conspiracy claim requires more than conclusory allegations. *See* <u>Sooner Prods. Co. v. McBride</u>, 708 F.2d 510, 512 (10th Cir. 1983). To state a basis for a conspiracy, the complaint must "allege specific facts showing an agreement and concerted action amongst the defendants." <u>Brooks v. Gaenzle</u>, 614 F.3d 1213, 1228 (10th Cir. 2010). Here, the complaint contains numerous allegations of evil intent, heinous acts, fraud, "cabals" and the like, "masterminded" by one of the defendants, but those are conclusory labels, not facts. The actual facts alleged do

---

[6] See *Pl.'s Mot. for Inj. Relief [Doc. #6] at 11.* The <u>Rooker-Feldman</u> *doctrine prohibits district courts from exercising appellate-like jurisdiction over the orders of a state court.* <u>Campbell v. City of Spencer</u>*, 682 F.3d 1278, 1281 (10th Cir. 2012).*

[7] *Defendant Holden, the guardian ad litem appointed for the minor child in the state proceeding, argues that Oklahoma law makes him, as a guardian ad litem, immune from liability. That is likely true as to any claims based on state law, but the immunity does not necessarily extend to claims based on federal law. However, given the absence of a plausible claim otherwise, it is unnecessary to pursue the question here.*

7

not support an inference of anything other than typical litigation conduct in a hotly disputed multi-state child custody matter.

Further, it is worth noting that what appears to be the lynchpin of plaintiff's conspiracy theories—the impact of the Court of Civil Appeals decision and the parties' actions subsequent to it—reflects a fundamental misunderstanding of the nature and effect of that decision. Plaintiff suggests that once the Court determined subject matter jurisdiction to be lacking, <u>everything</u> which occurred in the court proceedings after that determination was necessarily void. That is simply inaccurate. The Court of Appeals determined that the Oklahoma district court lacked jurisdiction to make a custody determination <u>as of the date of the default judgment</u>.[8] It did not say that an Oklahoma court could <u>never</u> acquire jurisdiction over the custody relationship. Indeed, it explicitly noted that the Missouri court found that Oklahoma had jurisdiction over the child custody issues, but that finding had not occurred as of the date of the default judgment. The actions necessary to Oklahoma jurisdiction could, and apparently did, occur later. As a result, plaintiff's various arguments premised on the idea that all later actions by the defendants were necessarily contrary to the appellate ruling lack a substantial basis.

Beyond these general deficiencies, the complaint fails to state a claim on more specific grounds. First, the complaint refers to various criminal statutes as the basis for plaintiff's claims. However, to the extent plaintiff's claims rely on such statutes, they must

---

[8] *"The records shows the trial court did not have subject matter jurisdiction to modify Missouri's custody determination <u>at the time of the Default Order of Modification</u>." [Doc. #1-12] at 8 (emphasis added).*

be dismissed. As a general rule, criminal statutes do not translate into a private right of action for a plaintiff's civil claims, nor do private litigants have the right to otherwise enforce criminal statutes. Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007).

The complaint also fails to state a constitutional claim against the remaining defendants under 42 U.S.C. § 1983 because he fails to establish that defendants acted under color of law.[9] Litigants in a civil action, or the lawyers representing those litigants, are not viewed as meeting that test merely by reason of their participation in the litigation, and are hence not ordinarily viewed as state actors for § 1983 purposes. *See* Bottone v. Lindsley, 170 F.2d 705, 706 (10th Cir. 1948). While a private person can be deemed to have acted under color of law in certain circumstances, such as where "he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State," Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982), that situation does not exist here. Plaintiff does not allege facts which would support an inference of joint action with the state actors (i.e. the judges), only conclusory allegations of a conspiracy. Allegations that the state judges adopted positions advocated by the other defendants, without more, fail to plausibly establish a conspiracy that would show that defendants acted under color of law.

---

[9] *Private citizens are generally not subject to liability under § 1983, as that section only applies to those who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's constitutional rights. This requirement that a person act under color of law is ordinarily identical to the requirement of "state action" to support a claim under the Fourteenth Amendment. See* Lugar v. Edmondson Oil Co., *457 U.S. 922, 928 (1982).*

Without a basis for concluding that defendants acted under color of law, there is no basis alleged for a § 1983 action. For substantially the same reasons as apply to conspiracies generally, the complaint also fails to state a claim for conspiracy based on 42 U.S.C. § 1985(3) and there is therefore no claim under 42 U.S.C. § 1986, which potentially imposes liability based on a failure to prevent a § 1985 conspiracy. In sum, the complaint fails to state a claim against the remaining defendants based on the various federal statutes upon which plaintiff relies.

Defendant Schumacher has not moved to dismiss, as she has apparently not been served. However, apart from not being the alleged "mastermind" of the conspiracy, the claims against Schumacher are substantially the same as those against defendant Christensen and will therefore be dismissed on the same basis.

## Conclusion

Defendants' motions to dismiss [Docs. #10, 12, and 14] are **GRANTED**. The claims against defendants Hammonds and Ogden are **DISMISSED WITH PREJUDICE**. The claims against all other defendants are **DISMISSED WITHOUT PREJUDICE** but without leave to amend. This case is **DISMISSED.**

**IT IS SO ORDERED.**

Dated this 2nd day of June, 2017.

*[signature]*
JOE HEATON
CHIEF U.S. DISTRICT JUDGE